**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GAMECRAFT, LLC, d/b/a AIMPOINT TECHNOLOGIES, a Florida limited liability company; and SWEENEY HOLDINGS, LLC, a Florida limited liability company,**

          **Plaintiffs,**

**-vs-**                                          **Case No. 6:12-cv-51-Orl-28KRS**

**VECTOR PUTTING, LLC, a Delaware limited liability company; MICHAEL SCHY, an individual; and DAVID BALBI, an individual,**

          **Defendants.**

_____

## ORDER

This case involves a dispute over "green reading" technology that golfers can utilize to improve their putting accuracy. Defendants have moved for dismissal, asserting that this Court lacks personal jurisdiction over any Defendant. In the alternative, Defendants have moved for a transfer of this case to the Northern District of California.[1] As discussed below, Defendants' motion shall be denied.

### I. Background

Plaintiffs' patented "green reading" technology allows a golfer to "accurately predict optimum putting parameters and putt trajectories from any point on a golf-green to any other

---

[1] The relevant filings include: Defendants' Motion to Dismiss or, in the Alternative, Motion to Transfer Venue (Doc. 17) and Plaintiffs' Response in opposition thereto (Doc. 21).

point on that golf-green."[2] This technology is called the AimPoint Green Reading System. In addition to owning a patent on this technology, Plaintiffs also have a trademark on the name "AimPoint."

Plaintiffs market the AimPoint System to golf professionals. Plaintiffs have a certification program by which the golf professionals learn the AimPoint system and then are certified to teach it to their clients. Defendants Michael Schy and David Balbi (collectively, "the individual Defendants") participated in the AimPoint program and became AimPoint Certified Instructors. The individual Defendants then allegedly misappropriated Plaintiffs' proprietary data and intellectual property to create their own green reading technology product–Vector Green Reading Technology.

Defendants' business model is similar to that of Plaintiffs' model; Defendants enroll golf professionals in the Vector training and certification program, and then the golf professionals teach the Vector methods to their clients. In advertising their product, Defendants allegedly made false and misleading statements, including statements attributing the green reading technology utilized by Vector to a source other than AimPoint. Defendants also allegedly interfered with Plaintiffs' business relationships by soliciting Plaintiffs' clients using false and misleading statements.

## II. Personal Jurisdiction

"The plaintiff bears the burden of making out a *prima facie* case for personal jurisdiction by presenting sufficient evidence to withstand a directed verdict motion." Internet

---

[2] All facts are taken from Plaintiffs' Complaint (Doc. 1) and for purposes of this Order are construed as true.

Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009) (citation omitted). The burden then shifts to the defendant to raise a "'meritorious challenge to personal jurisdiction'" "'through affidavits, documents or testimony.'" Id. (quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)). "If the defendant does so, 'the burden shifts [back] to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" Id.

The Court may only exercise specific personal jurisdiction[3] over non-resident defendants if two factors are met. Sculptchair, 94 F.3d at 626. First, there must be a basis for jurisdiction under Florida's long-arm statute, section 48.193, Florida Statutes; and second, maintenance of the suit cannot violate the Due Process Clause of the Fourteenth Amendment. Id. (citations omitted).

Florida's long-arm statute provides that "[a]ny person, whether or not a citizen or resident of this state, who personally or through an agent" commits a tortious act within this state "thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" the tortious act. § 48.193(1), Fla. Stat. "[T]he reach of the Florida long-arm statute is a question of Florida state law," and therefore this Court is "required to construe it as would the Florida Supreme Court." Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 890-91 (11th Cir. 1983) (citations omitted).

Defendants assert that they are not residents of Florida, do not conduct any business in Florida, and did not commit any tortious act within the state. Plaintiffs' Complaint, however, alleges that Defendants did, indeed, commit tortious acts within the state. In

---

[3]Plaintiffs do not assert that this Court may exercise general personal jurisdiction over any Defendant.

support, Plaintiffs have provided affidavits indicating that Defendants advertised their products at the 2012 PGA Merchandise Show in Orlando, Florida, (Althoff Aff., Doc. 22-3, ¶¶ 3-4), and solicited customers to attend training seminars in Orlando on January 24, 2012, and January 29, 2012, (id. ¶¶ 5-8). Plaintiffs allege that such solicitations and advertisements contained false and misleading statements that are the crux of Plaintiffs' Lanham Act and common law unfair competition claims. (Compl., Doc. 1, ¶¶ 27-30, 35-36). In addition, Plaintiffs have submitted an affidavit indicating that Defendants directly emailed golf professionals in Orlando and other areas of Florida who were clients of Plaintiffs in an attempt to solicit those golf professionals to participate in Defendants' seminars, which were held in Orlando, Florida. (Mogg Aff., Doc. 22-2, ¶¶ 4-7, 9). Plaintiffs allege that such solicitations included false and misleading statements and were made with the intent to damage or destroy Plaintiffs' business relationships. Defendants have not submitted any evidence to contradict Plaintiffs' affidavits and allegations. Accordingly, Plaintiffs have met their burden of establishing a basis for personal jurisdiction under Florida's long-arm statute.

Next, it must be determined "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." Sculptchair, 94 F.3d at 626 (quoting Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996)). In order to establish sufficient minimum contacts, three criteria must be met: (1) "the contacts must be related to the plaintiff's cause of action or have given rise to it"; (2) "the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws"; and (3) "the defendant's

contacts within the forum state must be such that she should reasonably anticipate being haled into court there." Id. at 631(citations omitted).

As discussed above, Defendants' contacts with Florida relate to Plaintiffs' cause of action. In addition, "[a] number of courts have recognized that where a defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum." New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 904 & n.44 (M.D. Fla. 2007) (citing cases); see also Calder v. Jones, 465 U.S. 783, 791 (1984) ("We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California."); Licciardello v. Lovelady, 544 F.3d 1280, 1288 (11th Cir. 2008) ("The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [the defendant] because his intentional conduct in his state of residence was calculated to cause injury to [the plaintiff] in Florida."); Healthcare Appraisers, Inc. v. Healthcare FMV Advisors, LLC, No. 10–80293–CIV, 2011 WL 4591960, at *1, *7 (S.D. Fla. Sept. 30, 2011) (finding minimum contacts where the out-of-state defendant allegedly committed trademark infringement and unfair competition that damaged a plaintiff in Florida). Accordingly, this Court's exercise of personal jurisdiction over Defendants in this case passes constitutional muster. Defendants' arguments that they cannot afford to litigate this case in Florida is more properly considered in conjunction with Defendants' motion to transfer.

### III. Venue

Defendants alternatively argue that the case should be transferred to the Northern

District of California. pursuant to 28 U.S.C. § 1404(a) or § 1406(a). Section 1406(a) provides that a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Defendants repeat their personal jurisdiction arguments and assert that because this Court cannot exercise personal jurisdiction over Defendants, it should transfer the case to the Northern District of California. As discussed previously, however, the exercise of personal jurisdiction over Defendants by this Court in this case is proper. Thus, transfer pursuant to § 1406(a) is not appropriate.

Defendants next argue that this Court should exercise its discretion to transfer this case pursuant to § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[4] The decision to transfer a case pursuant to § 1404(a) should be based on "an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The Eleventh Circuit has provided a list of nine factors that are relevant to such a decision:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

---

[4] Plaintiffs do not dispute Defendants' assertion that this case could have originally been brought in the Northern District of California.

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted). Additionally, "[P]laintiffs' choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson, 74 F.3d at 260.

Defendants first assert that in this case, Plaintiffs' choice of forum is a "neutral" factor because this case has no connection to the Middle District of Florida beyond the fact that Plaintiffs are located herein. As detailed in the personal jurisdiction discussion, however, this case is substantially tied to Orlando, which is in the Middle District of Florida

Next, Defendants argue that the convenience of the parties "weighs heavily in favor of transfer" to the Northern District of California because all of the Defendants reside therein and "[a]ll evidence and documents, and testimony that will go to the merits of this lawsuit will be located in Northern California." (Defs.' Mot., Doc. 17, at 8-9). According to the affidavits before the Court, however, Defendants' conclusory assertion is inaccurate. It appears that just as much, if not more, of the relevant evidence and witnesses are located in Florida. It is likely that both parties will be required to produce documents relating to their individual technologies, but most of the identified witnesses are located in Florida. (Balbi Aff., Ex. A to Def's Mot., ¶¶ 7-8; Sweeney Aff., Doc. 22-1, ¶ 25). While it is true that the Northern District of California. would be more convenient for Defendants, it would certainly not be more convenient for Plaintiffs, and "merely shift[ing] inconvenience from [Defendants] to [Plaintiffs]" is not sufficient to outweigh Plaintiffs' choice of forum. Robinson, 74 F.3d at 260.

Defendants additionally argue that transferring this case to the Northern District of California. would serve the convenience of non-parties and enable Defendants to compel the presence of unwilling witnesses. Defendants have identified three potential non-party

witnesses: Doug Chaiken, Esq.–Defendants' potential expert witness–and Patricia Templeton and Pamela Lehman–the licensors of the models and processes upon which Defendants' green reading technology is allegedly based.  (Balbi Aff. ¶¶ 7-8).  Of these three, however, Mr. Chaiken is the only one who has been identified as residing in California. Ms. Templeton is a resident of Texas, (id. ¶ 8), and Ms. Lehman's location is not provided. Thus, Ms. Templeton and Ms. Lehman are neutral, and while it would certainly be more convenient for Mr. Chaiken if the case were transferred to the Northern District of California., Plaintiffs have not argued that they would be unable to compel his presence in the Middle District of Florida  Plaintiffs, on the other hand, have identified twelve non-party fact witnesses located within Florida.  (Sweeney Aff. ¶ 25).  Additionally, Plaintiffs may not be able to compel the presence of at least one of those witnesses–Brian Mogg–if the case were transferred to the Northern District of California.  (See Mogg. Aff. ¶ 10).

Contrary to Defendants' assertion, the totality of the circumstances indicates that it would be more burdensome and costly to litigate this case in the Northern District of California. rather than in the Middle District of Florida  Transferring this case would not promote convenience or serve the interests of justice, and Defendants have not presented any basis to override Plaintiffs' choice of forum.  Therefore, Defendants' motion to transfer shall be denied.

## IV.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that Defendants'

Motion to Dismiss or, in the Alternative, Motion to Transfer Venue (Doc. 17) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida this 4th day of May, 2012.

*[signature]*
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party